T.C. Memo. 1997-473


UNITED STATES TAX COURT


WILLIAM W. HOWARD, Petitioner <u>v</u>. COMMISSIONER
OF INTERNAL REVENUE, Respondent


Docket No. 24572-95.                    Filed October 16, 1997.


William W. Howard, pro se.

<u>Michael A. Pesavento</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


BEGHE, <u>Judge</u>:  Respondent determined the following

deficiencies in and additions to petitioner's Federal income tax:


|      |            | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1987 | $102,525   | $25,631         | $5,537    |
| 1988 | 46,332     | 11,583          | 2,964     |

All section references are to the Internal Revenue Code as in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are whether, for the years 1987 and 1988, petitioner had unreported embezzlement income, and whether he is liable for additions to tax for his failures to file income tax returns and make estimated tax payments. We hold that petitioner had unreported embezzlement income, and that he is liable for the additions to tax.[1]

FINDINGS OF FACT

We find and incorporate the stipulated facts and exhibits. Petitioner resided in Lakeland, Florida, at the time he filed his petition.

Petitioner is a graduate of Emory University School of Law and prior to 1987 had practiced law in the State of Florida for 22 years. In the early 1970's, petitioner became acquainted with the family of Zelda Willey Putman (Mrs. Putman), who lived in his neighborhood. Over the years petitioner became a close friend of the Putmans; Mrs. Putman's daughters called petitioner "Uncle Bill".

---

[1] Respondent has conceded that petitioner's embezzlement income for 1988 is slightly less than the amount determined in the statutory notice of deficiency.

Petitioner drafted Mrs. Putman's will, which left her entire estate to her three daughters in equal shares. The will also named petitioner sole personal representative of Mrs. Putman's estate.

On April 20, 1987, Mrs. Putman died in a house fire in Winter Haven, Florida. The fair market value of all assets owned by Mrs. Putman at the time of her death was approximately $518,000.

On April 30, 1987, petitioner was appointed by the Circuit Court of Polk County to serve as the personal representative of her estate. On May 1, 1987, petitioner opened an estate trust account at the Barnett Bank of Polk County in Winter Haven, Florida, for Mrs. Putman's estate. Petitioner deposited into this account the proceeds from the sale of estate assets. Petitioner was the sole authorized signatory on the estate trust account.

Jesse Putman, Mrs. Putman's husband, was not a named beneficiary of the will, and he relinquished his statutory elective share in his wife's estate. However, he was entitled to receive and retain life insurance and homeowner's insurance proceeds in the amount of $170,900, less $51,500 to be paid to the daughters. Petitioner advised Mr. Putman that marshaling all assets into a "gross" cash estate would be in the best interest of the beneficiaries and would simplify computation of the estate taxes due the Internal Revenue Service. Mr. Putman agreed and

handed over the insurance proceeds to petitioner, which he deposited into his own personal trust account.

Petitioner told the Putmans that the estate would be processed in approximately 6 months to a year, and that in the interim they could get cash advances as necessary for important expenses. From May 1987 to May 1988, the Putmans periodically requested and received cash advances from petitioner. In May 1988, petitioner misrepresented to the Putmans that the probate judge had restricted their allowances to $1,000 each per month until the estate was settled, which he promised would be any day. In July 1988, petitioner misrepresented to the Putmans that the judge had "frozen" the assets of the estate, and that they could not get any money from it. On September 15, 1988, petitioner admitted to the Putmans that he could not disburse the estate moneys to them.

Petitioner's deposits from the estate trust account into three separate bank accounts owned or controlled by him,[2] when netted against payments made to the beneficiaries of the estate, amounted to $272,425 in 1987, and to $145,547 in 1988. These are the amounts respondent has determined, after giving effect to respondent's concession, see supra note 1, that are included in petitioner's gross income for these years.

---

[2] Only petitioner, and perhaps one of his secretaries, had signature authority over these three accounts.

The three bank accounts were in the following names: William Howard P.A. Trust, William Howard P.A., and Heartland Management. Petitioner was the sole shareholder, officer, and director of Heartland Management, a corporation which held title to real property that was used by petitioner as a personal residence and did not generate any income during 1987 and 1988. William Howard P.A. was a Florida professional services corporation, of which petitioner was the sole shareholder, officer and director. Neither petitioner nor William Howard P.A. nor Heartland Management filed Federal income tax returns for the years 1987 and 1988.

During 1987 and 1988, petitioner wrote large checks from these three accounts for his personal benefit, spending the bulk of the Putmans' inheritance. Among other things, petitioner used estate proceeds of approximately $132,000 to pay down the mortgage loan on his personal residence, approximately $47,000 to pay his personal tax obligations, and approximately $25,000 to settle a lawsuit unrelated to Mrs. Putman's estate. Petitioner also made other expenditures, including the construction of a boathouse and Jacuzzi, as well as paying himself and his secretaries salaries from the estate proceeds. All these expenditures were made without the knowledge and consent of the Putmans.

The record includes 28 promissory notes in varying amounts totaling in excess of the amounts of income charged to petitioner in the statutory notice, dated from June 30, 1987, through June 10, 1988, with stated interest of 10 percent, "To be paid at the time the Estate of Zelda Willey Putman is closed", signed by petitioner in connection with purported loans to petitioner from the estate. Petitioner signed the notes and made the purported loans to himself without the knowledge or consent of any of the beneficiaries of the Putman estate. Petitioner pledged no collateral to secure any of the alleged loans or any of the other payments he made to himself from the estate.

On September 13, 1989, following pleas of nolo contendere, petitioner was convicted on three counts of grand theft in the Circuit Court of Polk County, Florida. In addition to receiving a prison sentence, petitioner was ordered to pay restitution in the amount of $516,091 to the estate of Mrs. Putman and $48,978 to Mr. Putman. In compliance with the judgment and order of probation, petitioner for a period of 5 years has made timely monthly payments in the amount of $230 per month toward restitution to the Putman estate. In 1990, the Circuit Court of Polk County entered a civil judgment against petitioner in favor of each of the Putmans individually in an aggregate amount, including treble damages, substantially in excess of the Circuit Court's restitution order in the criminal proceeding, with interest at 12 percent from July 1, 1988. In 1990, Petitioner

was disbarred by the Florida Supreme Court, on the complaint of the Florida bar and an uncontested referee's report, for his misconduct in handling the Putman estate.

## OPINION

The primary issue for decision is whether petitioner's appropriations of estate moneys constitute income from embezzlement or whether they are loan proceeds.[3]  To the extent petitioner embezzled money from the estate, he has income for those years under section 61(a).  It is well established that gross income under section 61 includes income earned from illegal activity, such as the proceeds of embezzlement.  James v. United States, 366 U.S. 213, 219 (1961); Collins v. Commissioner, T.C. Memo. 1992-478, affd. 3 F.3d 625 (2d Cir. 1993).

Petitioner maintains that amounts he appropriated from the Putman estate are loans and are not proceeds of embezzlement.  He proffers 28 promissory notes in support.  We are entirely unpersuaded.  Whether the transactions between petitioner and the estate were loans depends ultimately on whether the beneficiaries

---

[3] Respondent does not argue that petitioner is precluded by the judgments in the criminal, civil, or disciplinary proceedings against him from arguing that the amounts appropriated by him should not be included in his gross income.  Petitioner does not argue that the amounts paid to Heartland Management and William Howard P.A. should be excluded from his gross income on the ground that they were received by persons other than himself. The stipulated facts and the entire record require the conclusion that these names, even if they are entities separate from petitioner, were alter egos of petitioner and that all receipts received by them during the years in issue must be attributed to petitioner.

of the estate were aware of and consented to the distributions at the times they were made. In order for a distribution of estate funds to be a loan, there must be evidence of a "consensual recognition, express or implied, of an obligation to repay". James v. United States, supra at 219; Katz v. Commissioner, T.C. Memo. 1990-533 (attorney's withdrawal of funds from an estate he represented were includable in his gross income despite promissory notes executed by him payable to the estate).

Petitioner has the burden of proving the facts that would support his claim and of overcoming the presumption of correctness of respondent's determination. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In the present case, this burden requires petitioner to prove that the beneficiaries of the estate not only were aware of his withdrawals of estate funds, but also consented to them. Because petitioner has stipulated that the beneficiaries had no knowledge of his withdrawals--a lack of knowledge corroborated by the testimony of Mr. Putman and the two daughters who attended the trial--he cannot carry this burden.

Petitioner mishandled Mrs. Putman's estate from its inception. He lied to the Putmans about the administration of the estate, and when the estate would be closed, while he was secretly misappropriating and spending most of their inheritance for his own personal benefit. Petitioner took advantage of what

the Putmans believed was his close friendship with them, and his position as an attorney, to steal their inheritance.[4]

Petitioner's engaging in the solitary activity of writing up promissory notes did not create loans between him and the estate. The promissory notes evidence no more than an inchoate intention to repay the amounts petitioner withdrew from the estate. Such an intention, even if there was one, cannot transform misappropriations into loans. Moore v. United States, 412 F.2d 974, 978-980 (5th Cir. 1969). As the court stated:

> The reasoning of James is that while an embezzler has a legal obligation to repay and may intend to repay, his legal obligation and intent are not the same as an actual agreement between lendor and borrower entailing "consensual recognition" of an obligation to repay and exact conditions of repayment. * * * The absence of a consensual agreement between the party providing the money and the party receiving it is fatal to the Trustee's contention that the money should be excluded from gross income on a loan theory. Therefore, it must be treated as income. [Id.; Katz v. Commissioner, supra.]

Petitioner's writing up of promissory notes was insufficient to create a consensual relationship between him and the beneficiaries of the estate. Petitioner's stipulation that the beneficiaries of the estate were unaware of his withdrawals

---

[4] Even if petitioner continues to make the monthly "restitution" payments of $230 per month for the rest of his life, these amounts are so small that the monthly payments will never begin to reduce the principal obligation to any extent. It is unfortunate for Mrs. Putman's heirs that the obligations that will be generated by our decision herein may interfere with petitioner's ability to pay his obligations under the outstanding criminal and civil judgments.

requires the conclusion that no consensual relationship was formed. Petitioner's withdrawals constitute embezzlement income and are not proceeds of loans.[5]

Petitioner argues that he needed no consents from the beneficiaries to his withdrawals of estate proceeds; because he had "legal title" to the estate assets as personal representative he was only borrowing from himself. Petitioner's argument is an incorrect statement of Florida law:

> The personal representative may hold legal title, but does not hold beneficial title to the assets and has no right to dispose of estate assets for his own use. The estate assets are not the personal representative's property, but are held by the personal representative for the benefit of the estate and ultimately for distribution to the beneficiaries. [State v. Lahurd, 632 So. 2d 1101, 1103 (Fla. Dist. Ct. App. 1994), review denied 639 So. 2d 978 (Fla. 1994)].

In State v. Lahurd, supra, the defendant argued that he could not be criminally charged with grand theft for converting estate proceeds, inasmuch as he had legal title to such proceeds, and no one can steal from himself. The court clarified the limited nature of the legal title held by a personal representative, holding "that a personal representative does take the 'property of another' when he or she converts estate assets to his or her

---

[5] The parties unnecessarily argue over the timing of the writing up of the promissory notes. Whether they were prepared contemporaneously with the withdrawals, as petitioner maintains, or simultaneously in preparation for trial, as respondent maintains, is irrelevant. In either event, no loans between petitioner and the estate resulted, inasmuch as the essential consensual relationship was lacking.

own use", id., so that a personal representative can be charged with grand theft for converting estate assets without the consent or approval of the estate's beneficiaries, id. at 1101-1103.

Although Mr. Howard had legal title to the estate assets in his capacity as personal representative, he had no right to dispose of the estate assets for his personal use. Mr. Howard has stipulated and the record clearly shows that he spent the money he withdrew from the estate for his personal use. Under State v. Lahurd, supra, when a personal representative converts estate proceeds for personal use, such proceeds are the "property of another". Consequently, Mr. Howard was not merely borrowing money from himself, and he did need consents from the beneficiaries to create legitimate loans between the estate and himself.

We also hold that petitioner is liable for the additions to tax under sections 6651(a)(1) and 6654. If a taxpayer fails to file a return by the due date and cannot show that the failure is due to reasonable cause and not willful neglect, then section 6651(a)(1) imposes an addition equal to 5 percent of the underpayment of tax for each month such failure continues, not to exceed 25 percent in the aggregate. Petitioner bears the burden of proving that his failure to file a timely return was due to reasonable cause and not willful neglect. Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985). Petitioner did not file income tax returns for 1987 and 1988. He has offered no

evidence or argument in explanation or mitigation. Accordingly, we hold him liable for additions to tax under section 6651(a)(1).

Section 6654 imposes an addition to tax for failure to pay estimated income tax. When there has been a failure to pay estimated tax, the addition under section 6654 is mandatory and no inquiry is made as to possible reasonable cause or lack of willful neglect. Grimes v. Commissioner, 82 T.C. 235, 237 (1984). Petitioner also has the burden of proving that he is not liable for this addition to tax. Rule 142(a); Habersham-Bey v. Commissioner, 78 T.C. 304, 319-320 (1982). Petitioner has failed to explain why he should not be held liable for the addition. Accordingly, we hold him liable for the addition to tax under section 6654 for the years in issue.

To reflect the foregoing and respondent's concession,

Decision will be entered

under Rule 155.